IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 1, 2015

**TIMOTHY L. DIGGS, SR. v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Montgomery County
No. 40700629    Don Ash, Judge**

—————————————————

**No. M2015-00503-CCA-R3-PC – Filed February 29, 2016**

—————————————————

The Petitioner, Timothy L. Diggs, Sr., appeals the Montgomery County Circuit Court's
denial of his petition for post-conviction relief from his convictions for aggravated child
abuse and felony murder and his effective life sentence. The Petitioner contends that the
post-conviction court erred by denying relief on his due process and ineffective assistance of
counsel claims. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA
MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

William F. Kroeger, Springfield, Tennessee, for the appellant, Timothy L. Diggs, Sr.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel;
John W. Carney, District Attorney General; and Helen Young, Assistant District Attorney
General, for the appellee, State of Tennessee.

**OPINION**

This case arises from an incident in which the Petitioner caused the death of his
girlfriend's twenty-two-month-old son. After a bench trial, the Petitioner was convicted of
aggravated child abuse and felony murder. This court upheld the convictions on appeal.
*State v. Timothy L. Diggs, Sr.*, No. M2010-00025-CCA-R3-CD, 2011 WL 2848321 (Tenn.
Crim. App. July 18, 2011), *perm. app. denied* (Tenn. Sept. 21, 2011).

This court's summary of the facts on direct appeal reflects that on the morning of
March 21, 2007, the Petitioner was caring for his girlfriend's two young children while she
was at work. At about 2:00 p.m., police and paramedics were dispatched to the home where

the Petitioner lived with his girlfriend and her two children following a 9-1-1 call from the Petitioner. The police found the victim unconscious, with breathing difficulties, and with a faint pulse. When paramedics arrived, the victim had no pulse and was not breathing. The victim was resuscitated and transported to the hospital, where he died from his injuries. The Petitioner told the police that the victim fell down the stairs, and a police officer noted the Petitioner's calm demeanor. *Id.* at *1-2.

The victim's autopsy revealed a skull fracture to the back of the head, brain swelling, brain bleeding, bleeding in his eyes, bleeding in the small bowel, and bruised lungs. The medical examiner concluded that the injuries were consistent with non-accidental trauma "such as striking, kicking, or throwing[.]" *Id.* at *2. The medical examiner said that the victim's injuries would have resulted in an "alteration of the level of consciousness" of the victim immediately after they occurred. *Id.*

The Petitioner told a social worker and a doctor at the hospital that he had taken the victim upstairs for a nap. He then went downstairs to check on the victim's infant sister, who was crying. The Petitioner heard the victim walking around upstairs and then saw the victim fall down the stairs and hit his head several times. The Petitioner later told a jail inmate housed with the Petitioner after his arrest that he was high on PCP at the time the victim was injured and that when the victim began crying, he "slammed the baby down" on the floor, kicked, and hit the victim. The Petitioner also told the inmate that he planned to tell the police that the victim was injured during a home invasion. A month after the victim's death, the Petitioner told the police that Allen Bell broke into the home and tried to rob him. The Petitioner said he was holding the victim when Mr. Bell grabbed the Petitioner, the victim's head hit a wall, and both men fell on the victim during the course of a struggle. The Petitioner stated that he initially did not disclose the home invasion to the police because Mr. Bell had threatened the family. Mr. Bell produced an alibi for the time frame in question. The victim's mother testified that the victim was healthy when she left for work, that when she called the home and spoke with the Petitioner at 1:43 p.m., nothing seemed to be amiss, but that the victim was brain-dead by 4:00 p.m. that day. *Id.* at *3-5.

The Petitioner filed a petition for post-conviction relief, alleging a due process violation because the trial judge failed to consider lesser included offenses of felony murder. He also argued that trial counsel provided ineffective assistance by failing to inform him of the difference between a bench trial and a jury trial relative to instructions about lesser included offenses, by failing to request the judge consider lesser included offenses in its deliberations, by failing to object contemporaneously when the judge did not consider lesser included offenses, and by failing to raise a lesser included offense issue in the direct appeal of his convictions.

At the post-conviction hearing, the trial judge testified that he did not remember the bench trial in this case but had reviewed this court's opinion. He said that in a felony murder case, he generally instructed a jury on second degree murder, reckless homicide, and criminally negligent homicide. The judge stated that in a bench trial, he began his deliberations with the charges in the indictment and considered whether the State had proven them beyond a reasonable doubt. He said that if so, he had no reason to consider lesser included offenses. The judge stated that in the Petitioner's case, he found beyond a reasonable doubt the elements of aggravated child abuse and the resulting death and that as a result, he did not consider lesser included offenses of felony murder. On cross-examination, the judge testified that if he had found the Petitioner not guilty of felony murder, he would have proceeded to consider lesser included offenses.

Trial counsel testified that he tried three or four cases a month before the trial judge when he worked for the Public Defender's office, including bench trials. Counsel said that he was aware of the judge's order of consideration principles and that if the judge found the Defendant guilty of aggravated child abuse, the judge would find the Defendant guilty of first degree felony murder.

Trial counsel testified that in jury trials, the trial judge instructed juries *sua sponte* on applicable lesser included offenses not requested by the parties. Counsel stated that the judge had found other defendants guilty of lesser included offenses in bench trials. Counsel said he and the Petitioner did not discuss that a jury trial would involve instructions relative to lesser included offenses and a list of the lesser included offenses.

Trial counsel testified that he recommended the Petitioner waive his right to a jury trial because graphic autopsy photographs of the victim's skull and brain would be introduced to establish the cause of death. Counsel said that he and the prosecutor met before the trial and reduced the number of autopsy photographs from twenty to four. Counsel stated that the trial judge had experience with these types of photographs and would "take it in stride" but that counsel feared "horrendous" prejudice if the photographs were shown to a jury. Counsel said that he did not file a motion to suppress the photographs because case law permitted the prosecution to introduce the photographs and that any objection would have been meritless. Counsel said that, in addition, the Petitioner was subject to cross-examination relative to a prior felony conviction if he testified.

Trial counsel testified that Tennessee juries used the "acquit before move on" method of deliberations, requiring a unanimous vote of not guilty before considering a lesser included offense. Counsel acknowledged the Tennessee Supreme Court's determination that a criminal defendant had a constitutional right for the trier of fact to consider all offenses supported by the evidence. Counsel said that he knew the trial judge would not consider lesser included offenses if he found the Petitioner guilty of aggravated child abuse but that

the judge would have considered lesser included offenses if he knew there was a reasonable possibility of an acquittal of the greater offense.

On cross-examination, trial counsel testified that he discussed lesser included offenses with the Petitioner but that their discussions did not include whether the trial judge would have a list of lesser included offenses in front of him at a bench trial. Counsel said the Petitioner first told the police that the victim had fallen down the stairs but later said that the Petitioner was protecting the victim from a burglar or drug dealer who was "committing acts of violence" on the victim. Counsel stated that a jury might attribute changing explanations as evidence of guilt, whereas the judge would consider other motivations for the Petitioner's change of story. In addition, counsel noted that the Petitioner's statements could be used to admit more autopsy photographs in order to prove that the nature of the victim's injuries were not consistent with the incidents the Petitioner described.

Trial counsel testified that the only other person who could have harmed the victim was the Petitioner's teenage son. Counsel said that the Petitioner did not testify in part because the Petitioner did not want to testify about his son. Counsel stated that the victim's mother said the Petitioner's son answered the phone at her home when she called around noon on the date of the victim's death, indicating that he was in the home, but that two witnesses and the Petitioner said the Petitioner's son was not in the home when the incident occurred.

Trial counsel testified that the evidence against the Petitioner was circumstantial, that a jury might have been satisfied with sending an innocent person to jail as long as someone was punished for the victim's death, and that in his opinion, the trial judge would hold the State to its burden of proof, which at the time meant excluding every reasonable hypothesis except guilt. Counsel did not believe the State excluded the possibility that the Petitioner was protecting his son.

Trial counsel testified that he discussed the advantages and disadvantages of a bench trial with the Petitioner, that he did not pressure the Petitioner, and that he thought the Petitioner agreed with counsel's reasoning. Counsel said that the Petitioner decided he wanted a bench trial.

Upon examination by the post-conviction court, trial counsel testified that he had won bench trials in front of the trial judge in the past. Counsel said that the prosecution did not extend any plea offers to the Petitioner.

The Petitioner testified that he and trial counsel discussed waiving a jury trial because of the autopsy photographs and remembered counsel's telling him that women with children might have thought the Petitioner caused the injuries resulting from the autopsy process, such

as the body being cut open. The Petitioner said he was not aware it was possible to make a motion to exclude the photographs. He stated that he and counsel never discussed lesser included offenses. The Petitioner said counsel never told him that if the trial judge found him guilty of aggravated child abuse, he would also find the Petitioner guilty of first degree murder. The Petitioner stated that had he known the judge would "be the only one making this decision" and a jury would have considered other offenses, he would have chosen a jury trial. The Petitioner stated that he did not testify at the trial or at any preliminary hearings.

On cross-examination, the Petitioner testified that when he was arrested, he was charged with first degree murder. He did not remember whether he asked trial counsel about potential plea offers between his arrest and the trial. The Petitioner said that counsel's testimony regarding their conversations relative to having a bench trial was accurate and that they discussed potential outcomes of a jury trial at the beginning of the representation, but that the Petitioner did not remember discussing any charge below second degree murder.

The post-conviction court denied relief. The court credited the testimony of trial counsel and the trial judge and discredited the Petitioner's testimony. The court found that the trial judge determined the State had proven the elements of felony murder and aggravated child abuse beyond a reasonable doubt, that the trial judge did not need to deliberate on lesser included offenses, and that had the trial judge found the Petitioner not guilty of felony murder, he would have considered second degree murder. The court found that the trial judge and counsel were familiar with each other's professional habits and that counsel had tried many jury and bench trials before the judge, some of which resulted in not guilty verdicts.

The post-conviction court found that trial counsel recommended a bench trial based on potential prejudice from the autopsy photographs of the victim's skull and brain but that counsel believed the trial judge would not be prejudiced. The court also found that counsel did not object to the photographs because the photographs were admissible evidence and any objection would have been meritless. The court found that counsel's second reason for recommending a bench trial was possible prejudice from testimony regarding the Petitioner's varying explanations for the victim's injuries. The court found that counsel felt the trial judge would consider reasons for the inconsistencies other than guilt and that witness testimony undermined counsel's defense theory that the Petitioner was protecting his son. The court also found that counsel felt the trial judge would have applied the standard of proof for circumstantial evidence more accurately than a jury. The court found that counsel expressed concern relative to the Petitioner's prior felony convictions as a potential source of impeachment, that the Petitioner did not testify, and that the Petitioner knowingly and voluntarily waived his right to a jury trial.

The post-conviction court found that trial counsel and the Petitioner did not discuss the similarities and differences between a trial judge's consideration of lesser included offenses and a jury's consideration of lesser included offenses, and although "it may have been preferable" to explain the process more fully, the post-conviction court concluded that counsel's failure to do so was not deficient performance. The post-conviction court found that counsel was aware of "Tennessee's 'acquit first' order of consideration and jury instructions" and noted that counsel knew the trial judge followed the law in rendering a verdict. The post-conviction court found that counsel and the Petitioner discussed generally potential sentences and lesser included offenses before the trial and that the State had not extended a plea offer.

The post-conviction court concluded that *Frederick Morrow v. State*, No. M2005-00554-CCA-R3-PC, 2006 WL 1931698 (Tenn. Crim. App. July 11, 2006), was applicable to the Petitioner's case. In *Frederick Morrow*, this court concluded that a defendant had the right for lesser included offenses to be considered in a bench trial but that the petitioner had not proven by clear and convincing evidence the court did not consider lesser included offenses. *Id.* at *12. This court noted that the petitioner

> has not cited any statute, case law, or other rule of law, and we are not aware of such authority, requiring a trial judge at a bench trial to recite the law of lesser included offenses in order that a defendant may know that the trial judge considered such offenses in rendering the verdict. Nor are we aware of any law requiring the trial judge to make a finding of fact on the record with respect to each lesser included offense he or she considered in deliberations. We presume that the trial court knows the law and that the trial court considers all appropriate lesser included offenses in rendering a decision in a bench trial.

*Id.*

In the present case, the post-conviction court noted post-conviction counsel's remarks that the trial judge's deliberations and actions followed the law and concluded that "[b]ecause the trial judge's actions did not violate the law, trial counsel did not render deficient performance in failing to object to the trial judge's actions." The court found that the Petitioner provided no evidence showing the outcome of the trial would have been different and noted that counsel had legitimate concerns relative to prejudicial evidence. The court found that the Petitioner knowingly and voluntarily waived his right to a jury trial. This appeal followed.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f)

(2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

## I. Due Process

The Petitioner contends that the post-conviction court erred by denying his due process claim relative to the trial judge's consideration of lesser included offenses. He argues that the trial judge erred by failing to consider the lesser included offenses of felony murder in its deliberations and requests plain error relief. The State responds that the Petitioner waived this issue by failing to raise it at the trial or on direct appeal and by abandoning the issue at the post-conviction hearing. We agree with the State.

The Petitioner's due process argument was raised for the first time in his petition for post-conviction relief. Tennessee Code Annotated section 40-30-106(g) (2014) states that a post-conviction "ground for relief is waived if the petitioner . . . personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," unless two exceptions not relevant to this case apply. *See* Tenn. Sup. Ct. R. 28 § 2(D) ("A ground for relief is waived if petitioner or petitioner's counsel failed to present the ground for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented."). Because the Petitioner could have presented his argument that the trial judge did not consider lesser included offenses at either the trial or on direct appeal, but did not do so, the issue is waived.

In addition, the record reflects that at the post-conviction evidentiary hearing, post-conviction counsel stated, "My problem is not with what [the trial judge] did. My problem is with what counsel failed to do in advising his client regarding his waiver of a jury trial." Upon questioning by the post-conviction court relative to what post-conviction counsel believed the trial judge should have done differently in his deliberations, counsel said, "[The judge] did it correctly." We conclude that counsel conceded at the post-conviction hearing that the trial judge did not err. The Petitioner is not entitled to relief on this basis.

## II. Ineffective Assistance of Counsel

The Petitioner contends that the post-conviction court erred by denying relief relative to his ineffective assistance of counsel claim. He argues counsel was deficient by failing to explain the difference in lesser included offense instructions in a jury trial and at a bench

trial, by failing to request that the trial judge consider lesser included offenses of felony murder, by failing to object when the judge did not consider lesser included offenses of felony murder, and by failing to raise the issue in the appeal of his convictions. The State responds that counsel was not deficient and that the Petitioner has not shown prejudice. We agree with the State.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The record reflects that the post-conviction court accredited trial counsel's and the trial judge's testimony. Counsel testified that he did not explain to the Petitioner the difference between jury instructions in a jury trial and a judge's deliberation procedure in a bench trial. The record also reflects, however, that the order of consideration of offenses is identical regardless of whether a jury or a judge is deliberating. Counsel testified that he

-8-

knew the judge's practice, that the judge often *sua sponte* instructed juries on lesser included offenses, and that the judge had found defendants guilty of lesser included offenses at bench trials. In counsel's experience, the judge knew the law. The post-conviction court found and post-conviction counsel conceded that the judge's application of the "acquit first" order of consideration was proper. We note that counsel advised the Petitioner against a jury trial because admissible evidence was potentially prejudicial and that the Petitioner's waiver of his right to a jury trial was knowing and intelligent. The evidence does not preponderate against the post-conviction court's finding that counsel was not deficient by failing to object to the trial judge's proper application of the law and that counsel did not provide deficient performance relative to lesser included offenses. The Petitioner has failed to show by clear and convincing evidence that counsel's performance was deficient. The Petitioner is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the post-conviction court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE